IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES E. AMOS, II, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| PLAN ADMINISTRATOR OF ORION | § | |
| HEALTHCORP, INC. EMPLOYEE | § | |
| BENEFIT PLANS, ORION | § | |
| HEALTHCORP, INC. EMPLOYEE | § | |
| BENEFIT PLANS, ORION | § | |
| HEALTHCORP, INC., RMI | § | CIVIL ACTION NO. H-11-4623 |
| PHYSICIAN SERVICES CORPORATION, | § | |
| CHI T. "CINDY" LUU, KIMBERLY | § | |
| SINGLETON, RMI PHYSICIAN | § | |
| SERVICES CORPORATION EMPLOYEE | § | |
| BENEFIT PLANS, PLAN | § | |
| ADMINISTRATOR OF RMI | § | |
| PHYSICIAN SERVICES CORPORATION | § | |
| EMPLOYEE BENEFIT PLANS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Charles E. Amos, II, brings this action against defendants: (1) Plan Administrator of Orion HealthCorp, Inc. Employee Benefit Plans ("Orion Plan Administrator"); (2) Orion HealthCorp, Inc. Employee Benefit Plans ("Orion Plans"); (3) Orion HealthCorp, Inc. ("Orion"); (4) RMI Physician Services Corp. ("RMI"); (5) Chi T. "Cindy" Luu ("Luu"); (6) Kimberly Singleton ("Singleton"); (7) RMI Physician Services Corporation Employee Benefit Plans ("RMI Plans"); and (8) Plan Administrator of RMI Physician Services Corporation Employee Benefit Plans ("RMI Plan

Administrator"). Plaintiff asserts claims against all defendants for failure to comply with reasonable requests for information, lost benefits, equitable remedies in the form of injunctive relief, and attorney's fees for alleged violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, et seq. Pending before the court is the Re-Filed Motion for Summary Judgment of Defendants Plan Administrator of Orion HealthCorp, Inc. Employee Benefit Plans, Orion HealthCorp, Inc. Employee Benefit Plans, Orion HealthCorp, Inc., RMI Physician Services Corporation, Kim Singleton, RMI Physical Services Corporation Employee Benefit Plans, and Plan Administrator of RMI Physician Services Corporation Employee Benefit Plans ("Defendants' Re-Filed MSJ") (Docket Entry No. 40). For the reasons explained below, defendants' motion for summary judgment will be granted in part and denied in part.

## I.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548, 2552 (1986).   A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case."   <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>).   If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.   <u>Id.</u>   Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."   <u>Id.</u>

## II.   **Undisputed Facts**

Prior to January 11, 2005, plaintiff was president, chief executive officer, and majority shareholder of RMI, a medical billing and records company.[1]   Defendant Luu was a minority shareholder of RMI.[2]   On January 11, 2005, RMI, Luu, and two individuals who are not parties in this action — John McBride and Alan Nottingham — entered into a Purchase Agreement with plaintiff ("Seller") pursuant to which Luu, McBride, and Nottingham purchased

---

[1]Plaintiff's Original Complaint, Docket Entry No. 1, p. 1 ¶ 1.

[2]<u>Id.</u>

-3-

RMI from the plaintiff.[3]  Pursuant to § 13 of the Purchase Agreement, plaintiff resigned from RMI and RMI agreed to provide plaintiff health insurance as an RMI retiree until he became eligible for Medicare.  Section 13 stated:

> <u>Retirement of Seller</u>.  Effective on this date, Seller has tendered his resignation to the Companies. The parties acknowledge and agree that Seller shall have no further obligations to the Companies whatsoever, specifically including, without limitation, the obligations to provide executive or administrative advice, and Seller shall only provide such advice as he deems appropriate.  As additional consideration for the transactions contemplated hereby, and in order to induce Seller to enter into this Agreement, RMIPS has agreed to provide the following benefits to Seller:
>
> (a)  RMIPS shall maintain Seller's current office, furnishings, fixtures, and equipment for Seller's sole and exclusive use until such time as the Note has been paid in full.
>
> (b)  RMIPS shall provide to Seller health insurance benefits, as a retiree of RMIPS, until such time as Seller is eligible for medicare coverage.  Such coverage to be provided by RMIPS shall be on such terms and conditions, and provide such benefits (such as deductible amounts, co-pay amounts, etc.) no less favorable than under the health insurance program offered to employees of RMIPS as of

---

[3]<u>Id.</u> at 5 ¶ 13.  <u>See</u> Purchase Agreement, Exhibit 8 to Plaintiff Charles E. Amos II's Response to Defendants' Motions for Summary Judgment ("Plaintiff's Initial Response"), Docket Entry No. 26, and Exhibit B to Motion for Summary Judgment of Defendants Plan Administrator of Orion HealthCorp, Inc. Employee Benefit Plans, Orion HealthCorp, Inc. Employee Benefit Plans, Orion HealthCorp, Inc., RMI Physician Services Corporation, Kim Singleton, RMI Physician Services Corporation Employee Benefit Plans, and Plan Administrator of RMI Physician Services Corporation Employee Benefit Plans ("Defendants' MSJ"), Docket Entry No. 15-2. <u>See also</u> Affidavit of Chi T. "Cindy" Luu in Support of Motion for Summary Judgment ("Luu Affidavit"), Exhibit B to Defendants' Re-Filed MSJ, Docket Entry No. 40, ¶ 7.

this date, and shall include coverage for
Seller, Seller's spouse, and Seller's
dependents. Seller shall reimburse RMIPS for
the cost of the insurance coverage for Seller
and Seller's family on a monthly basis;
provided, however, Seller shall not be liable
for reimbursement of any premium increase
above the average increase in premium of
RMIPS's group health insurance plan. In the
event that the insurance benefits contemplated
by this section are no longer available (i.e.,
no health insurance policy available to RMIPS
will provide for retiree coverage), Seller may
obtain such other comparable health insurance
as he may deem appropriate and RMIPS will
reimburse Seller for the cost of such
insurance in excess of the maximum amount for
which Seller was liable to reimburse RMIPS
pursuant to the foregoing provisions of this
Section 1[3](b).[4]

Subsequently, disputes developed concerning changes to RMI's

health plan.[5] To resolve these disputes RMI, plaintiff, and Luu,

McBride, and Nottingham ("the Individuals"), entered into an

Amendment to Purchase Agreement ("Amendment"), dated November 14,

2006,[6] pursuant to which

2.   Section 13(a) of the Agreement is deleted and
     replaced by the following:

     (a)   RMIPS shall not be required to maintain an
           office for Seller.  Seller and RMIPS shall
           determine a reasonable time for Seller to

---

[4]Purchase Agreement, Exhibit 8 to Plaintiff's Initial
Response, Docket Entry No. 26, and Exhibit B to Defendants' MSJ,
Docket Entry No. 15-2, pp. 10-11 ¶ 13.

[5]Luu Affidavit, Exhibit B to Defendants' Re-Filed MSJ, Docket
Entry No. 40, ¶ 8.

[6]Amendment to Purchase Agreement, Exhibit 3 to Plaintiff's
Initial Response, Docket Entry No. 24, and Exhibit E to Defendants'
MSJ, Docket Entry No. 15-5.

obtain his personal effects from the office he previously had at RMIPS.

3. Section 13(b) of the Agreement is deleted and replaced by the following:

(b) Health Insurance Coverage for Seller

(i)   RMIPS currently provides health insurance as a benefit for its employees. RMIPS will provide Seller the option of receiving health insurance as a member of a retiree class. Subject only to subparagraph[s] (iii) and (v) below, RMIPS will provide Seller retiree class coverage that is the same as that provided to RMIPS employees (from the standpoint of the extent of coverage and co-pays and deductibles). RMIPS shall make similar coverage available for Seller's spouse and dependents. This option shall continue until Seller is eligible for Medicare coverage, at which time this option automatically terminates.

(ii)  With respect to payment of premiums for the health insurance coverage provided to Seller, RMIPS will pay 100% of the premium for such insurance. Seller shall be responsible for all of his co-pays, co-insurance and deductibles. With respect to payment of premiums for health insurance coverage provided for Seller's spouse and dependents, Seller will pay 100% of the premium of such insurance. RMIPS will invoice Seller on a monthly basis for Seller's cost of the insurance premiums provided hereunder, and Seller shall pay RMIPS for Seller's share of such insurance premiums within thirty (30) days of his receipt of the invoice from RMIPS.

(iii) If RMIPS is unable to obtain the retiree class coverage referred to in this Section 13(b) and Seller acquires health insurance coverage for himself, RMIPS will pay Seller on a monthly basis an

-6-

amount equal to what RMIPS would have been obligated to pay toward Seller's premiums under subparagraph (ii) above, calculated as of the last date on which RMIPS was able to obtain retiree class coverage, adjusted each year by a percentage equal to the percentage increase in the cost of health insurance coverage for RMIPS employees. For the purpose of this Agreement, "unable to obtain" shall mean that RMIPS is not able to procure the same after using its best efforts to obtain insurance from a company offering such retiree class coverage.

(iv)   This option is for health insurance coverage only. By way of example only, the option does not apply to vision, dental, long term disability, short term disability, life, or death benefits plans. It is understood and agreed that RMIPS is not the provider under this option or under any health care coverage policy or plan. It is also expressly understood that the providers' terms and conditions, co-pays, and deductible provisions, and all other conditions of coverage established by the providers shall apply to Seller and govern Seller's rights and obligations under such coverage and plan.

(v)   The obligations of RMIPS pursuant to this Section 13(b) shall survive any merger or reorganization of RMIPS, and such obligations shall accrue to and be binding on any survivor or successor entity. In the event that RMIPS sells all or substantially all of its assets, it shall either (a) ensure that the buyer of the RMIPS assets expressly assumes the obligations of this Section 13(b) or (b) prior to selling all or substantially all of its assets, pay Seller the present value of what RMIPS would have to pay Seller under subparagraph (iii) for the period between the time of the sale of all or

substantially all of the assets and the
time when Seller is eligible for
Medicare coverage. In the event of the
liquidation or dissolution of RMIPS, the
obligations of RMIPS pursuant to this
Section 13(b) shall be considered a debt
or other liability of RMIPS to Seller.

4.   RMIPS shall, upon the execution of this Amendment,
pay Seller $6,333.37, which shall constitute a
partial reimbursement or refund of the amount paid
or reimbursed by Seller to RMIPS for insurance
coverage provided to Seller from the date of the
Agreement to the effective date of this Amendment.[7]

In 2008 the Individuals began discussions with Orion for Orion
to purchase all of the stock of RMI.[8]  Paragraph 6(f) of the 2005
Purchase Agreement prohibited RMI from selling its stock without
prior written consent of plaintiff unless RMI had fully paid
plaintiff for his stock.[9]  On June 19, 2008, RMI, plaintiff, and
the Individuals entered a Letter Agreement pursuant to which the
Individuals agreed to pay plaintiff $2,031,198.61 in full
satisfaction of their obligations to pay him for his stock.[10]
Pursuant to ¶ 4 of the Letter Agreement, RMI would continue
providing plaintiff health insurance pursuant to the Amended
Purchase Agreement:

---

[7]Id. ¶¶ 2-4.  See also Luu Affidavit, Exhibit B to Defendants'
Re-Filed MSJ, Docket Entry No. 40, ¶ 9.

[8]Id. ¶ 10.

[9]Purchase Agreement, Exhibit 8 to Plaintiff's Initial
Response, Docket Entry No. 26, and Exhibit B to Defendants' MSJ,
Docket Entry No. 15-2, ¶ 6(f).  See also Luu Affidavit, Exhibit B
to Defendants' Re-Filed MSJ, Docket Entry No. 40, ¶ 11.

[10] See Letter Agreement, Exhibit F to Defendants' MSJ, Docket
Entry No. 15.

4.   <u>Seller's Health Insurance</u>. Notwithstanding anything contained herein to the contrary, Buyer covenants and agrees to provide health insurance benefits to Seller, pursuant to the terms and conditions set forth in Section 13(b) of the Purchase Agreement and as amended and clarified in the Amendment to Purchase Agreement between the Parties.[11]

On July 1, 2008, Orion entered into a Stock Purchase Agreement with the Individuals pursuant to which Orion purchased all of RMI's stock from the Individuals.[12]   Pursuant to § 8.8 of the Stock Purchase Agreement, RMI and Orion agreed that

> Promptly following the Closing, Buyer or RMI will obtain an individual health insurance policy covering Mr. Charles E. Amos (the "<u>Amos Individual Health Policy</u>") that provides coverage equivalent to the coverage afforded to Mr. Amos on the date hereof under RMI's health insurance policy and otherwise satisfies the requirements of RMI to provide health insurance to Mr. Amos pursuant to that certain Amendment to Purchase Agreement dated November 14, 2006 (the "<u>Original Agreement</u>").   Buyer shall invoice the Shareholders in advance for the cost of implementing and maintaining the Amos Individual Health Policy and the Shareholders shall pay all such costs directly to the issuer of the Amos Individual Health Policy (or at Buyer's election, remit payment therefor to Buyer) for the life of the obligation under the Original Agreement.   The Shareholders shall be solely responsible for any liability of RMI arising as a result of the Shareholders' failure to pay any such costs, including, without limitation, termination of the Amos Individual Health Policy and damages resulting therefrom as a consequence of a breach by RMI of the

_____

[11]<u>Id.</u> ¶ 4.

[12]<u>See</u> Stock Purchase Agreement, Exhibit 1 to Plaintiff's Initial Response, Docket Entry No. 27, and Exhibit G to Defendants' MSJ, Docket Entry No. 15-7.   <u>See also</u> Luu Affidavit, Exhibit B to Defendants' Re-Filed MSJ, Docket Entry No. 40, ¶ 12; and Affidavit of Kim Singleton in Support of Motion for Summary Judgment (Singleton Affidavit), Exhibit A to Defendants' Refiled MSJ, Docket Entry No. 40, ¶ 4.

Original Agreement; provided, that Buyer and RMI shall be solely responsible for obtaining the Amos Individual Health Policy.  In the event that RMI or Orion is not able at any time to obtain the Amos Individual Health Policy, or any renewal thereof, prior to the expiration of the obligations under the Original Agreement, the Shareholders shall remain liable for reimbursing RMI or Orion for the cost of maintaining Mr. Amos on the then existing health insurance policies of RMI or Orion, as applicable.[13]

Following Orion's purchase of RMI's stock, RMI became one of Orion's seven wholly-owned subsidiaries.[14]   None of Orion's other subsidiaries had their own health insurance plans.[15]  Instead, Orion had a health insurance plan ("the Orion Plan") in which Orion employees participated and in which the employees of Orion's wholly-owned subsidiaries could participate.[16]  The Orion Plan did not (and does not now) contain any "retiree" class pursuant to which retirees of Orion or its subsidiaries are able to participate in the Orion Plan.[17]

When Orion purchased RMI's stock, RMI's employees were participating in one of two existing health insurance plans insured by United HealthCare Insurance Company ("the UHC Plans").

---

[13]Stock Purchase Agreement, Exhibit 1 to Plaintiff's Initial Response, Docket Entry No. 27, and Exhibit G to Defendants' MSJ, Docket Entry No. 15-7, § 8.8.

[14]Singleton Affidavit, Exhibit A to Defendants' Refiled MSJ, Docket Entry No. 40, ¶ 3.

[15]Id. ¶ 5.

[16]Id.

[17]Id. ¶ 6.

Plaintiff was a participant in the United Health Care HSA Choice Plan 125.[18]  Both UHC Plans were terminated effective August 31, 2008,[19] and RMI employees were offered the opportunity to participate in the Orion Plan effective September 1, 2008. Plaintiff was not offered the opportunity to participate in the Orion Plan because he was not an RMI employee.  Instead, plaintiff was offered an individual policy of health insurance, but plaintiff failed to complete required paperwork.[20]  By letter dated September 3, 2008, and signed by Orion's CEO, Terrence L. Bauer, Orion forwarded to plaintiff a check in the amount of $44,368.54. The amount of the check was calculated to reflect the present value of the 2008 premium rate for plaintiff's health insurance coverage through the age of 65 when he would be eligible for Medicare. Plaintiff retained the check but did not cash it.[21]  In October of 2011 Orion received a request from plaintiff's attorney for plan information.[22]

------------------

[18]Id. ¶ 7.

[19]Id. ¶ 8.

[20]Id. ¶ 9.

[21]Id. ¶ 21.  See also Exhibit N to Defendants' MSJ , Docket Entry No. 15-15 (copy of September 3, 2008, letter from Bauer to plaintiff with check endorsed to plaintiff drawn on Orion account).

[22]Plaintiff's Original Complaint, Docket Entry No. 1, ¶ 34. See also Exhibit O to Defendants' MSJ (copy of August 26, 2008, e-mail from plaintiff to Luu and Singleton requesting plan documents); and Defendants' Re-Filed MSJ, Docket Entry No. 40, p. 10 (recognizing Orion's receipt of plaintiff's October 2011 request as an undisputed fact).

III.  **Procedural Background**

On December 29, 2011, plaintiff filed his Original Complaint (Docket Entry No. 1).  On April 9, 2012, answers were filed by both Luu (Docket Entry No. 9) and by the Orion defendants (Docket Entry No. 10.).  On May 4, 2012, the Orion defendants filed their original Motion for Summary Judgment (Docket Entry No. 15), and on May 22, 2012, Luu filed her Motion for Summary Judgment (Docket Entry No. 21).  On January 29, 2013, the court entered an Order (Docket Entry No. 38) denying without prejudice the motions for summary judgment filed by the Orion defendants and by Luu, and granting defendants the right to re-file their motions on or before April 14, 2013.  On April 12, 2013, the Orion defendants refiled their motion for summary judgment (Docket Entry No. 40).  On April 16, 2013, the parties entered a stipulation (Agreed Motion, Docket Entry No. 42) agreeing that all defendants could rely upon the Orion defendants' refiled motion for summary judgment.  On April 17, 2013, plaintiff filed a Motion for Leave to File First Amended Complaint (Docket Entry No. 43), which the court denied by Order entered on May 3, 2013 (Docket Entry No. 53).

IV.  **Analysis**

Defendants argue that they are entitled to summary judgment on all of plaintiff's ERISA claims because they are time barred or because since September 1, 2008, plaintiff has neither been an employee of RMI or Orion nor a participant in an employee health

-12-

plan.    Plaintiff  responds  that  defendants  are  not  entitled  to summary  judgment  on  his  ERISA  claims  because  there  exist  genuine issues  of  material  fact  as  to  whether  he  is  a  plan  participant.

## A.    Claims for Failure to Provide Plan Documents

Alleging  that  defendants  violated  29  U.S.C.  §  1166  and  related provisions  by  failing  to  provide  employee  benefit  plan  documents  in response  to  requests  that  plaintiff  made  in  August  of  2008  and requests  that  his  attorney  made  in  October  of  2011,  plaintiff asserts  claims  under  29  U.S.C.  §  1132(c).  Defendants  argue  that they  are  entitled  to  summary  judgment  on  plaintiff's  claims  arising from  requests  made  in  August  of  2008  because  those  claims  are  time barred.    Defendants  argue  that  they  are  entitled  to  summary judgment  on  plaintiff's  claims  arising  from  requests  made  in October  of  2011  because  plaintiff  is  unable  to  establish  that  he  or any  of  his  family  members  were  plan  participants  or  beneficiaries entitled  to  receive  plan  documents  at  that  time.

1.    Applicable Law

Title  29  of  the  United  States  Code,  §  1132(c)  allows  plan participants  and  beneficiaries  to  bring  civil  actions  for  a  plan administrator's  failure  to  provide  plan  information  in  compliance with  29  U.S.C.  §  1166:

> (a)  Persons empowered to bring a civil action
> A civil action may be brought —
>
> (1) by a participant or beneficiary —

> (A)     for   the   relief   provided   for   in
>         subsection (c) of this section . . .
>
>                       . . .
>
> (c)  Administrator's   refusal   to   supply   requested
>      information; penalty for failure to provide annual
>      report in complete form
>
>      (1)  Any administrator (A) who fails to meet the
>           requirements  of  paragraph  (1)  or  (4)  of
>           section   1166[a]   of   this   title,   section
>           1021(e)(1) of this title or section 1021(f),
>           or section 1025(a) of this title with respect
>           to a participant or beneficiary, or (B) who
>           fails or refuses to comply with a request for
>           any information which such administrator is
>           required by this subchapter to furnish to a
>           participant   or   beneficiary   (unless   such
>           failure   or   refusal   results   from   matters
>           reasonably   beyond   the   control   of   the
>           administrator) . . . within 30 days after such
>           request  may  in  the  court's  discretion  be
>           personally   liable   to   such   participant   or
>           beneficiary in the amount of up to $100 a day
>           from the date of such failure or refusal, and
>           the  court  may  in  its  discretion  order  such
>           other relief as it deems proper.

29 U.S.C. § 1132(a)(1)(A).

ERISA does not contain a statute of limitations.  When Congress does not provide a statute of limitations, federal courts look to state law for the most analogous limitations period.  See DelCostello v. International Brotherhood of Teamsters, 103 S.Ct. 2281, 2287 (1983); Lopex ex rel. Gutierrez v. Premium Auto Acceptance Corp., 389 F.3d 504, 506-07 (5th Cir. 2004).  In choosing an appropriate limitations period under a federal statute that does not specify such a period, courts first must characterize the essence of the statute in question to determine which state

-14-

cause of action is most analogous.   Courts must then determine
whether application of the state limitations period would frustrate
the policies underlying the federal law or impede its practical
implementation.   If a state limitations period would not generate
such adverse consequences, the state limitations period applies and
the inquiry is concluded.   If, however, a conflict is apparent,
courts must examine whether the federal interest in uniformity
mandates the application of an analogous federal standard, looking
at whether federal law affords a closer analogy than state law.
Prostar v. Massachi, 239 F.3d 669 (5th Cir. 2001).

      2.   Application of Law to Undisputed Facts

          (a)   Summary Judgment Will Be Granted on Claims Arising
               from Requests Made in August of 2008.

Defendants' argument that they are entitled to summary
judgment on plaintiff's claim that they violated ERISA by failing
to provide him plan documents that he requested in August of 2008
because those claims are time barred is controlled by the Fifth
Circuit's decision in Lopez, 389 F.3d at 506-07.   In Lopez the
Fifth Circuit applied the two-year statute of limitations contained
in the Texas Insurance Code for unfair insurance practices claims
to an ERISA claim arising from allegations that the plan
administrator violated ERISA by failing to provide a participant
notice of her right to continue health insurance coverage following
a separation from service.   The court reasoned that the failure to
provide notice required by ERISA, i.e., 29 U.S.C. § 1166, is

-15-

closely analogous to an unfair insurance practice because an employer's duty to provide notice under § 1166 is related to the provision of insurance. Lopez, 389 F.3d at 509-10. See Tex. Ins. Code § 541.162 (formerly Tex. Ins. Code art. 21.21 § 16(d)).[23] The court differentiated actions for violation of § 1166 brought pursuant to 29 U.S.C. § 1132(c)(1), which it held are subject to a two-year statute of limitations, from actions to enforce rights arising under an employee benefit plan brought pursuant to 29 U.S.C. § 1132(a)(1)(b), which it held are subject to a four-year limitations period:

> [T]he duty to notify is . . . solely a creature of section 1166, and the statutory damages available under 29 U.S.C. § 1132(c) apply to section 1166 alone. . .
>
> . . .
>
> . . . Given that section 1132 expressly distinguishes a claim under section 1166 from virtually every other form of ERISA action and, furthermore, specifies that only statutory, rather than contract-like, damages are available under section 1166, we conclude, for statute of limitations purposes, that a claim under section 1166 does not sound in contract.

---

[23]The Fifth Circuit's decision in Lopez relied on Tex. Ins. Code Art. 21.21 § 16(d), which was repealed effective April 1, 2005. See Acts 2003, 78th Leg., ch. 1274, § 26(a)(1). However, the Texas Legislature reenacted the two-year statute of limitations for such claims at Tex. Ins. Code § 541.162, effective April 1, 2005. Section 541.162 provides that "a person must bring an action under this chapter before the second anniversary of the following: (1) the date the . . . unfair or deceptive act occurred[.]" Tex. Ins. Code § 541.061 provides, in turn, that "[i]t is an . . . unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by: . . . (5) failing to disclose a matter required by law to be disclosed."

> . . . We conclude that this provision, subject to a two-year statute of limitations, Tex. Ins. Code Art. 21-21 § 16(d), provides the closest state law analog to [the plaintiff's] federal cause of action arising from [defendant's] violation of section 1166.

Lopez, 389 F.3d at 509-10 (citing Myers v. King's Daughters Clinic, 912 F.Supp. 233, 237 (W.D. Tex.), aff'd 96 F.3d 1445 (5th Cir. 1996) (Table)). Because the face of plaintiff's Original Complaint demonstrates that this action was brought on December 29, 2011, more than two years after defendants' alleged failure to provide plan documents in August of 2008, plaintiff's ERISA claims for failure to provide plan documents arising from those requests are time barred. Accordingly, defendants' motion for summary judgment on claims arising from requests for plan documents made in August of 2008 will be granted.

> (b) Summary Judgment Will Not Be Granted on Claims Arising from Requests Made in October of 2011.

Defendants do not argue that plaintiff's claims arising from requests for plan documents made in October of 2011 are time-barred but, instead, that plaintiff is unable to establish that he or any of his family members were plan participants or beneficiaries entitled to receive plan documents at that time. In support of this argument, defendants submit evidence that they contend shows that the RMI plan in which plaintiff, his spouse, and dependents participated was terminated effective August 31, 2008, and that although starting on September 1, 2008, RMI employees were eligible to participate in the Orion Plan, plaintiff and his family were not

-17-

eligible to participate in that plan, and did not become plan participants. Because for the reasons stated in § IV.B, below, the court concludes that genuine issues of material fact preclude the court from finding that the RMI Plan was properly terminated or that plaintiff is not entitled to benefits from either the RMI or the Orion Plan, defendants' motion for summary judgment on claims arising from requests for plan documents made by plaintiff's attorney in October of 2011 will be denied.

**B.   Claims for ERISA Plan Benefits**

Citing 29 U.S.C. § 1132(a)(1)(B), plaintiff seeks "to recover his lost benefits, enforce his rights, and clarify his rights, under the Plans."[24]   Defendants argue that they are entitled to summary judgment on plaintiff's claims for ERISA-plan benefits because

> (1) the claim is nothing more than a simple state law claim for an alleged breach of the Purchase Agreement documents -- Plaintiff is not a participant in any current RMI or Orion employee welfare plan from which he could recover benefits (Singleton Aff., ¶25; Luu Aff., ¶17); (2) Plaintiff has waived and/or is estopped from making this claim by his refusal to accept the Humana health insurance that he selected and RMI attempted to provide to him in 2008 (Singleton Aff., ¶¶16-18); and (3) even if Plaintiff were in some way entitled to benefits under the 2008 RMI Terminated Plan in which he was a participant, Plaintiff did not exhaust the administrative remedies applicable to a claim for benefits under that plan. Singleton Aff., ¶23.[25]

---

[24]Plaintiff's Original Complaint, Docket Entry No. 1, p. 10 ¶ 40.

[25]Defendants' MSJ, Docket Entry No. 40, pp. 3-4. <u>See also id.</u> at 15.

Plaintiff argues that defendants are not entitled to summary judgment on his claim for ERISA-plan benefits because whether he was properly terminated from the RMI Plan and whether he is eligible to participate in Orion's current ERISA-covered health plan are genuine issues of material fact that preclude the court from granting defendants' motion for summary judgment.[26]

1.   Applicable Law

Title 29 of the United States Code, § 1132(a)(1)(B) allows a participant or beneficiary in an ERISA-governed plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Moreover, ERISA includes a preemption clause stating that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . ."  29 U.S.C. § 1144(a) (expressly excepting two situations not applicable here). A state law cause of action "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such plan." Shaw v. Delta Air Lines, Inc., 103 S.Ct. 2890, 2899-2900 (1983). See also Crowell v. Shell Oil Co., 541 F.3d 295, 303 (5th Cir. 2008); Hubbard v. Blue Cross & Blue Shield

---

[26]Plaintiff Charles E. Amos II's Re-Filed and Supplemental Response to Defendants' Motions for Summary Judgment ("Plaintiff's Re-Filed and Supplemental Response"), Docket Entry No. 45.

Assoc., 42 F.3d 942, 945 (5th Cir. 1995), cert. denied, 115 S.Ct.

2276 (1995)).  ERISA defines a "plan" as follows:

> The terms "employee welfare benefit plan" and "welfare
> plan" mean any plan, fund, or program which was
> heretofore or is hereafter established or maintained by
> an employer . . . to the extent that such plan, fund, or
> program was established or is maintained for the purpose
> of providing for its participants or their beneficiaries,
> through the purchase of insurance or otherwise,
> (A) medical, surgical, or hospital care or benefits, or
> benefits in the event of sickness, accident, disability,
> death or unemployment. . . .

29 U.S.C. § 1002(1).  To determine whether a state law claim has a

connection with or reference to such a plan, courts in the Fifth

Circuit apply a two-prong test, which asks:

> (1) whether the state law claims address areas of
> exclusive federal concern, such as the right to receive
> benefits under the terms of an ERISA plan; and
> (2) whether the claims directly affect the relationship
> among traditional ERISA entities-the employer, the plan
> and its fiduciaries, and the participants and
> beneficiaries.

McAteer v. Silverleaf Resorts, Inc., 514 F.3d 411, 417 (5th Cir.),

cert. denied, 128 S.Ct. 2884 (2008) (quoting Woods v. Texas

Aggregates, L.L.C., 459 F.3d 600, 602 (5th Cir. 2006)).

    2.   Application of the Law to the Undisputed Facts

        (a)   Plaintiff's Claims for Plan Benefits Is Actionable
              Under ERISA, Not State Contract Law.

Plaintiff's claim for ERISA-plan benefits based on allegations

that the defendants have wrongfully denied him the ability to

participate in either the RMI or the Orion group health insurance

plan is a claim in which plaintiff seeks to recover benefits due to

-20-

him under the terms of an ERISA plan, to enforce his rights under the terms of an ERISA plan, and to clarify his rights to future benefits under the terms of an ERISA plan.   Although defendants argue that plaintiff is not now an ERISA plan participant because the RMI ERISA plan in which he was a participant terminated effective August 31, 2008, defendants do not deny that at least until that date plaintiff was a participant in the RMI ERISA plan. Accordingly, plaintiff's claim for ERISA plan benefits is cognizable under ERISA, i.e., 29 U.S.C. § 1132(a)(1)(B).  See Aetna Health Inc. v. Davila, 124 S.Ct. 2488, 2496 (2004) ("If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits.  A participant or beneficiary can also bring suit generically to 'enforce his rights' under the plan, or to clarify any of his rights to future benefits").

> **(1)   Defendants Have Not Established As a Matter of Law that Plaintiff Is Not Entitled to Plan Benefits.**

Citing Curtiss-Wright Corp. v. Schoonejongen, 115 S.Ct. 1223 (1994), defendants argue that they are entitled to summary judgment on plaintiff's claim for ERISA-plan benefits because "[t]he RMI employee benefit plan in which Plaintiff was a participant . . . no longer exists."[27]   Thus, defendants argue that "[t]here are no

---

[27]Defendants' MSJ, Docket Entry No. 40, p. 15.

benefits that Plaintiff can recover under that defunct plan."[28]   In
support of this argument defendants cite two cases: <u>McCormack v.</u>
<u>Computer Sciences Corp.</u>, 99 Fed. Appx. 458, 462-63 (4th Cir. 2004)
(holding that in a § 1132(a)(1)(B) action brought by former
employee several months after restricted stock ownership plan was
terminated, employer was not liable for payment of benefits from
the terminated plan because the plan ". . . no longer existed and
could no longer function"); and <u>Trigon Ins. Co. v. Columbia Naples</u>
<u>Capital, LLC</u>, 235 F.Supp.2d 495, 501-02, 506 (E.D. Va. 2002)
(dismissing plaintiff's ERISA §§ 1132(a)(2) and 1132(a)(3) claims
against terminated plan where, <u>inter alia</u>, plaintiff's claims were
nothing more than breach of contract claims disguised as an ERISA
claim and adequate state-law breach of contract remedy was
available).[29]

Citing <u>Halliburton Co. Benefits Committee v. Graves</u>, 463 F.3d
360, 378 (5th Cir. 2006), and <u>Evans v. Sterling Chemicals Inc.</u>, 660
F.3d 862 (2011), <u>cert. denied</u>, 132 S.Ct. 1769 (2012), plaintiff
responds that defendants are not entitled to summary judgment on
his claim for ERISA-plan benefits because genuine issues of
material fact exist as to whether the Stock Purchase Agreement
merged the RMI and Orion Plans or amended the Orion Plan to include
a class of retirees in which he is eligible to participate.

---

[28]<u>Id.</u> at 15-16.

[29]<u>Id.</u> at 16.

Defendants reply that even if the court were to accept plaintiff's argument that the Stock Purchase Agreement amended the Orion plan, the express terms of § 8.8 of that agreement establish that plaintiff would be entitled only to an individual health insurance policy, which is precisely what plaintiff was offered but refused to accept.[30]

In Curtiss-Wright plaintiffs were retirees who sued the defendant-employer after the defendant-employer amended its employee welfare benefit plan to terminate the post-retirement health insurance coverage that it had long provided to its retirees.  Observing that "ERISA does not create any substantive entitlement to employer-provided health benefits," 115 S.Ct. at 1228, and that plan administrators are, therefore, "generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans," id., the Supreme Court reversed the Third Circuit's holding that the plan amendment at issue was void ab initio, and remanded the case for the lower courts to determine if the plan had been amended in a permissible manner.  Id. at 1228 and 1231.  See also Schoonejongen v. Curtiss-Wright, 143 F.3d 120, 123 (3d Cir. 1998) ("[W]e will address the question directly posed by the Supreme Court: '[W]hether Curtiss-Wright's valid amendment procedure — amendment 'by the company' — was complied with in this case.").  Curtiss-Wright establishes that ERISA welfare benefit

---

[30]Reply Brief of Orion Defendants in Support of Re-Filed Motion for Summary Judgment, Docket Entry No. 55, p. 4.

plans can be amended or terminated if the plan contains a valid amendment procedure and the amendment at issue was adopted in compliance with that procedure. Curtiss-Wright, 115 S.Ct. at 1228 and 1231. See also Schoonejongen, 143 F.3d at 126-33 (examining defendant's compliance with ERISA-plan's amendment procedure). Curtiss-Wright does not support defendants' argument that they are entitled to summary judgment because defendants have neither argued nor presented any evidence showing that the RMI plan was terminated in compliance with a valid amendment procedure. Defendants' reliance on McCormack, 99 Fed.Appx. at 462-63, and Trigon, 235 F.Supp.2d at 501-02 and 506, in support of their motion for summary judgment is unpersuasive because neither opinion is binding on this court, and both opinions are inapposite.

McCormack is an unpublished Fourth Circuit opinion holding that an executive terminated his employment on the date he submitted his letter of resignation, not on the expiration of a 30-day "cure" period during which the employer was entitled to reverse changes in the terms of the executive's employment following a merger that required his resignation to be deemed a constructive termination. The issue was important for determining the amount the plaintiff was entitled to receive as severance under the agreement at issue. In addition to other types of severance benefits, the plaintiff sought benefits from a Restricted Stock Ownership Plan (RSOP) maintained by his pre-merger employer. The defendant argued that it had no liability under the RSOP because

-24-

that plan ended on the date that the defendant acquired all of the plaintiff's pre-merger employer's stock, and that date was two days before the plaintiff submitted his letter of resignation.   The court agreed with the defendant stating that "[w]ith the termination of the RSOP in the merger documents and the transfer of all of [the employer's] stock to [the defendant], the plan no longer existed and could no longer function."  McCormack, 99 Fed. Appx. at 463.  McCormack does not support defendants' argument that they are entitled to summary judgment because the plaintiff in McCormack did not dispute that the RSOP from which he sought benefits ceased to exist before he resigned, while the plaintiff in this case does dispute defendants' contention that an ERISA-plan in which he is eligible to participate no longer exists.

Trigon is a district court case from the Eastern District of Virginia in which a third-party claims administrator for an employee benefit plan sued the plan, the plan sponsor, and a former plan trustee seeking payment for services allegedly rendered and benefits allegedly paid to beneficiaries after the plan was terminated.   In holding that the claims administrator's state law contract claims were not preempted by ERISA, the court reasoned that the claims at issue were simply claims for money that the administrator alleged it was owed under a contract.   The court explained that Trigon's claim "does not implicate the goal of uniform [ERISA] plan administration or regulate the terms of a[n ERISA] plan or the type of benefits a plan may provide.  Nor does

-25-

Trigon's claim involve issues related to faulty [ERISA] plan administration." Trigon, 235 F.Supp.2d at 506. Trigon does not support defendants' argument that they are entitled to summary judgment because the claims alleged in Trigon did not concern the plaintiff's ability to enforce rights due under an ERISA-plan while plaintiff's claim for ERISA-plan benefits based on allegations that the defendants have wrongfully denied him the ability to participate in either the RMI or the Orion group health insurance plans is a claim to enforce the plaintiff's rights under an ERISA-plan. See Davila, 124 S.Ct. at 2496.

>           (2)     **Plaintiff Has Raised Genuine Issues for Trial
>                   As to Whether He Is Entitled to Plan
>                   Benefits.**

Plaintiff argues that when Orion undertook, via § 8.8 of the Stock Purchase Agreement, to "satisf[y] the requirements of RMI to provide health insurance to [him]," that Orion either created out of whole cloth, a "plan, fund, or program" or added a piece (or fund or program) to its existing "plan."[31] Plaintiff argues that his claims for ERISA-plan benefits based on § 8.8 of the Stock Purchase Agreement are supported by the Fifth Circuit's opinions in Halliburton, 463 F.3d at 360, and Evans, 660 F.3d at 862, holding that corporate agreements such as the Stock Purchase Agreement pursuant to which Orion acquired RMI can amend an ERISA plan

---

[31]Plaintiff's Re-Filed and Supplemental Response, Docket Entry No. 45, p. 14.

whether or not the agreement was expressly intended to effect such an amendment. In Halliburton the Fifth Circuit considered whether a specific provision in a merger agreement modified an employee welfare benefit plan so as to limit the ability to amend or terminate the plan. As part of a merger agreement between Halliburton and Dresser Industries, Halliburton agreed to "maintain with respect to eligible participants . . . the [Dresser] retiree medical plan, except to the extent that any modifications thereto are consistent with the changes in the medical plans provided by [Halliburton] . . . for similarly situated active employees." Halliburton, 463 F.3d at 365. The court found that, based on this language, the merger agreement effectively amended the Dresser retiree medical plan. Id. at 372-75. Therefore, when Halliburton, as the parent corporation, acquired all of Dresser's rights and obligations under Dresser's employee benefits plans through a separate agreement that took effect after the merger, Halliburton acquired the right to amend or terminate the Dresser retiree medical plan, but that right was subject to the limitation that it had previously agreed to, i.e., that it could only change the retiree plan to the extent that it made the same changes for its similarly situated active employees. Id. at 377.

In Evans, 660 F.3d at 862, the Fifth Circuit held that Sterling, the purchasing company, violated a provision of an asset purchase agreement that required it to offer certain post-retirement benefits to retirees of an acquired company when it

increased the retirees' health insurance premiums.   Citing
Halliburton the Fifth Circuit explained that a corporate agreement
can amend an ERISA plan, regardless of whether the agreement is
specifically intended to effect an amendment, as long as the
agreement is in writing, contains a provision directed to an ERISA
plan, and plan amendment formalities are satisfied.   The Fifth
Circuit held that the first two requirements were satisfied because
the purchase agreement was in writing and contained provisions
directed to an ERISA plan.   The Fifth Circuit held that the third
requirement was satisfied by the actions of the board of directors
of the acquiring company in approving the merger agreement and the
chairman of the board of directors in signing the agreement because
such actions were sufficient to constitute a valid amendment of the
acquiring company's medical plan.   Id. at 871-72.

The Stock Purchase Agreement at issue in this case is a
written corporate document, and § 8.8 of that agreement is directed
to provisions of both RMI's and Orion's ERISA plans because in
pertinent part that section provides that

> Buyer or RMI will obtain an individual health insurance
> policy covering Mr. Charles E. Amos (the "Amos Individual
> Health Policy") that provides coverage equivalent to the
> coverage afforded to Mr. Amos on the date hereof under
> RMI's health insurance policy and otherwise satisfies the
> requirements of RMI to provide health insurance to
> Mr. Amos pursuant to that certain Amendment to Purchase
> Agreement dated November 14, 2006 (the "Original
> Agreement"). . . . In the event that RMI or Orion is not
> able at any time to obtain the Amos Individual Health
> Policy, or any renewal thereof, prior to the expiration
> of the obligations under the Original Agreement, the
> Shareholders shall remain liable for reimbursing RMI or

Orion for the cost of maintaining Mr. Amos on the then
existing health insurance policies of RMI or Orion, as
applicable.[32]

Section 8.8 satisfies the first two requirements identified by the
Fifth Circuit in Halliburton and Evans as necessary for a corporate
agreement to constitute an effective amendment to an ERISA plan
because the Stock Purchase Agreement is in writing and Section 8.8
is a provision directed to an ERISA plan.

With respect to the remaining requirement that the actions
were sufficient to constitute a valid amendment of the acquiring
company's medical plan, plaintiff argues that the court must find
that a genuine issue of material fact exists because "[a]s Orion's
chief, Bauer clearly had the authority to enter into the Stock
Purchase Agreement,"[33] and by virtue of that fact, Orion's board of
directors at a minimum ratified any amendment to its ERISA plan
necessarily effected by the Stock Purchase Agreement.  Because the
issue of corporate authority to amend an ERISA plan is "a fact-
intensive inquiry," Schoonejongen, 115 S.Ct. at 1231, and because
in Evans, 660 F.3d at 871-72, the Fifth Circuit held that approval
of the purchase agreement at issue there by Sterling's board of
directors and the execution of that agreement by Sterling's
chairman satisfied the formalities for effecting an amendment to

---

[32]Stock Purchase Agreement, Exhibit 1 to Plaintiff's Initial
Response, Docket Entry No. 27, and Exhibit G to Defendants' MSJ,
Docket Entry No. 15-7, § 8.8.

[33]Docket Entry No. 45, p. 11.

Sterling's ERISA plan, the court concludes that whether Bauer's execution of the Stock Purchase Plan effectively amended the Orion ERISA plan to preclude defendants from terminating plaintiff's participating in either the RMI or the Orion health plan raises genuine issues of material fact that preclude the court from granting defendants' motion for summary judgment. See Halliburton, 463 F.3d at 372-73 (recognizing that under Delaware law, a corporation's board of directors retains ultimate control over delegating authority and authorizing corporate actions). See also Coffin v. Bowater Inc., 501 F.3d 80, 87-91 (1st Cir. 2007) (stock purchase agreement did not eliminate obligation of seller to provide retiree medical); Bender v. Newell Window Furnishings, Inc., 681 F.3d 253 (6th Cir.), cert. denied, 133 S.Ct. 436 (2012) (Where there was an obligation to continue retiree health for union employees, a reservation of rights clause in the sale agreement would not alter the obligation to provide benefits that had already vested, and buyer had expressly assumed seller's retiree health liabilities elsewhere in the agreement.).

      (b)  Defendants Have Not Established that Plaintiff Is Estopped from Asserting Claims for Plan Benefits.

Defendants argue that plaintiff is estopped from asserting, or has waived, any claim to have RMI or Orion provide him with health insurance coverage because plaintiff was offered an individual health insurance policy, "but Plaintiff refused to accept the

-30-

proffered coverage."[34]   In support of this argument, defendants cite
the affidavit of Kim Singleton, the plan administrator for the
Orion employee benefit plans.[35]   In pertinent part Singleton's
affidavit states:

> 11.   On July 28, 2008, I spoke to Plaintiff on the
> telephone, and sent him a follow-up email
> presenting Plaintiff with a number of options for
> the individual health insurance policy that RMI
> would make available to him.  **Exhibit H** attached to
> [Orion]'s Motion is a true copy of my July 28, 2008
> email to Plaintiff.
>
> . . .
>
> 17.   As a result of Plaintiff's refusal to return the
> paperwork for the Humana insurance, on August 25,
> 2008, I sent a letter to Plaintiff in which I
> informed him that, *inter alia*,
>
> > >   Plaintiff's health insurance coverage under
> >     the Terminated RMI Plan would terminate on
> >     September 1, 2008;
> >
> > >   Plaintiff needed to complete the Humana
> >     paperwork by the close of business on Friday,
> >     August 29, to prevent a lapse in his health
> >     insurance coverage; and
> >
> > >   If Plaintiff failed to notify [Orion] that he
> >     had filled-out the Humana paperwork to obtain
> >     the health insurance coverage that RMI was
> >     offering to provide to him, RMI would send him
> >     a check in the amount of $44,368.54 — the
> >     present value of the premiums for the Humana
> >     insurance that would be payable until
> >     Plaintiff reached retirement age.  Exhibit M
> >     attached to the Motion is a true copy of my
> >     August 25, 2008, letter to Plaintiff.

---

[34]Defendants' MSJ, Docket Entry No. 40, p. 15.

[35]Singleton Affidavit, Exhibit A to Defendants' Re-Filed MSJ,
Docket Entry No. 40, ¶ 2.

-31-

18.  After my August 25 letter to Plaintiff, he
continued to refuse to submit the Humana
application paperwork for the health insurance he
had chosen. As a result, RMI was unable to provide
that health insurance coverage to Plaintiff,
despite the fact that it was ready, willing, and
able to do so.

.   .   .

21.  By letter dated September 3, 2008, I forwarded to
Plaintiff, on behalf of RMI, a check in the amount
of $44,368.54 — the present value of the premiums
for the Humana health insurance coverage for
Plaintiff through the age of his retirement (65).
A true copy of my September 3, 2008 letter to
Plaintiff is attached to the Motion as **Exhibit N**.
Plaintiff kept the check but did not cash it.[36]

Plaintiff argues that defendants' argument that he waived his

right to ERISA plan benefits

is a red herring . . . [because n]othing in ERISA
provides that a Plan Participant waives his right to
mandated benefits and coverage by rejecting a Plan
Administrator's offer to provide lesser coverage.
Indeed, Defendants provide no authority for such a
proposition.[37]

Plaintiff also argues that defendants' contention that he waived

his right to ERISA plan benefits has no merit because

the Stock Purchase Agreement's self-serving references to
"an individual health insurance policy covering
Mr. Charles E. Amos" must be disregarded because they are
in direct conflict with the provisions mandating that
RMIPS and Orion jointly provide "coverage equivalent to
the coverage afforded to Mr. Amos on the date hereof
under RMI's health insurance policy and otherwise
satisfies the requirements of RMI to provide health

---

[36]Id. ¶¶ 11, 17-18, and 21.

[37]Plaintiff's Re-Filed and Supplemental Response, Docket Entry
No. 45, p. 18.

insurance to Mr. Amos pursuant to that certain Amendment
to Purchase Agreement dated November 14, 2006."[38]

Plaintiff argues that his rejection of defendants' minuscule
benefit payment offer of $44,368.54 cannot constitute a waiver
because the amount offered was based on flawed methodology and was
made *after* the "payment in lieu of benefits" provision in the
Amended Agreement expired.   Plaintiff cites his own affidavit as
evidence that he refused the individual policy that defendants
offered to him in July and August 2008 after he

> determined that the coverage, premiums, and co-pays
> offered by Orion under the individual policy was not the
> same as under RMIPS' Plan.
>
> For these reasons, I determined that the individual
> policy offered by Orion was not the "equivalent" of
> RMIPS' group health plan under which I was a participant.
>
> Since 2008, I applied for, and was denied, on
> multiple occasions, individual health insurance,
> including the insurer selected by Orion.[39]

The undisputed evidence shows that pursuant to ¶ 3 of the
Amended Purchase Agreement dated November 14, 2006, RMI promised to
provide plaintiff health insurance under the following terms:

> (i)  RMIPS currently provides health insurance as a
> benefit for its employees.   RMIPS will provide
> Seller the option of receiving health insurance as
> a member of a retiree class.   Subject only to
> subparagraph[s] (iii) and (v) below, RMIPS will
> provide Seller retiree class coverage that is the
> same as that provided to RMIPS employees (from the

---

[38]Id. at 15.

[39]Affidavit of Charles E. Amos, II, Exhibit 16 to Plaintiff's
Re-Filed and Supplemental Response, Docket Entry No. 45.

standpoint of the extent of coverage and co-pays
and deductibles). RMIPS shall make similar
coverage available for Seller's spouse and
dependents. This option shall continue until
Seller is eligible for Medicare coverage, at which
time this option automatically terminates.

(ii) With respect to payment of premiums for the health
insurance coverage provided to Seller, RMIPS will
pay 100% of the premium for such insurance. Seller
shall be responsible for all of his co-pays,
co-insurance and deductibles. With respect to
payment of premiums for health insurance coverage
provided for Seller's spouse and dependents, Seller
will pay 100% of the premium of such insurance.
RMIPS will invoice Seller on a monthly basis for
Seller's cost of the insurance premiums provided
hereunder, and Seller shall pay RMIPS for Seller's
share of such insurance premiums within thirty (30)
days of his receipt of the invoice from RMIPS.

(iii) If RMIPS is unable to obtain the retiree class
coverage referred to in this Section 13(b) and
Seller acquires health insurance coverage for
himself, RMIPS will pay Seller on a monthly basis
an amount equal to what RMIPS would have been
obligated to pay toward Seller's premiums under
subparagraph (ii) above, calculated as of the last
date on which RMIPS was able to obtain retiree
class coverage, adjusted each year by a percentage
equal to the percentage increase in the cost of
health insurance coverage for RMIPS employees.
For the purpose of this Agreement, "unable to
obtain" shall mean that RMIPS is not able to
procure the same after using its best efforts to
obtain insurance from a company offering such
retiree class coverage.

(iv) This option is for health insurance coverage only.
By way of example only, the option does not apply
to vision, dental, long term disability, short term
disability, life, or death benefits plans. It is
understood and agreed that RMIPS is not the
provider under this option or under any health care
coverage policy or plan. It is also expressly
understood that the providers' terms and
conditions, co-pays, and deductible provisions, and
all other conditions of coverage established by the

-34-

           providers shall apply to Seller and govern Seller's rights and obligations under such coverage and plan.

(v)    The obligations of RMIPS pursuant to this Section 13(b) shall survive any merger or reorganization of RMIPS, and such obligations shall accrue to and be binding on any survivor or successor entity.  In the event that RMIPS sells all or substantially all of its assets, it shall either (a) ensure that the buyer of the RMIPS assets expressly assumes the obligations of this Section 13(b) or (b) prior to selling all or substantially all of its assets, pay Seller the present value of what RMIPS would have to pay Seller under subparagraph (iii) for the period between the time of the sale of all or substantially all of the assets and the time when Seller is eligible for Medicare coverage.  In the event of the liquidation or dissolution of RMIPS, the obligations of RMIPS pursuant to this Section 13(b) shall be considered a debt or other liability of RMIPS to Seller.[40]

The undisputed evidence also shows that § 8.8 of the Stock Purchase Agreement dated July 1, 2008, obligated the defendants to provide plaintiff "coverage equivalent to the coverage afforded to [him] . . . under RMI's health insurance policy and otherwise satisfies the requirements of RMI to provide health insurance to Mr. Amos pursuant to that certain Amendment to Purchase Agreement dated November 14, 2006."

    Pursuant to the Amended Purchase Agreement RMI thus promised to provide plaintiff the option of receiving retiree class coverage that is the same as that provided to RMIPS employees (from the standpoint of the extent of coverage and co-pays and deductibles),

---

[40]Amendment to Purchase Agreement, Exhibit 3 to Plaintiff's Re-Filed and Supplemental Response, Docket Entry No. 45, and Exhibit E to Defendants' MSJ, Docket Entry No. 15-5, ¶ 3(b)(i)-(v).

and to continue to provide plaintiff that option until he is eligible for Medicare coverage, at which time the option automatically terminates.  If after using its best efforts to obtain insurance from a company offering such retiree class coverage, RMI was unable to provide plaintiff that coverage, and plaintiff acquires health insurance coverage for himself, RMI promised to pay plaintiff on a monthly basis an amount equal to what RMI would have been obligated to pay toward his premiums calculated as of the last date on which RMI was able to obtain retiree class coverage, adjusted each year by a percentage equal to the percentage increase in the cost of health insurance coverage for RMIPS employees.  RMI also promised that

> [i]n the event that RMIPS sells all or substantially all of its assets, it shall either (a) ensure that the buyer of the RMIPS assets expressly assumes the obligations of this Section 13(b) or (b) prior to selling all or substantially all of its assets, pay Seller the present value of what RMIPS would have to pay Seller under subparagraph (iii) for the period between the time of the sale of all or substantially all of the assets and the time when Seller is eligible for Medicare coverage.[41]

The Amended Purchase Agreement did not afford RMI or its successor in interest the option of  providing plaintiff an individual policy that was not the same as that provided to RMI employees from the standpoint of the extent of coverage and co-pays and deductibles. Nor did the Amended Purchase Agreement afford RMI or its successor the option of paying plaintiff the present value of premiums for a policy that was not the same as that provided to RMI employees.

---

[41]Id. ¶ 3(v).

In support of his argument that the individual insurance policy that defendants offered him in July and August of 2008 did not satisfy the requirements of the Stock Purchase Agreement, plaintiff asserts that "according to Debra Hill, the broker all parties agreed to retain to search for 'equivalent coverage' for Mr. Amos, an individual health insurance policy can never be 'equivalent' of a group health policy."[42]   As evidence that an individual policy can never be equivalent to a group policy, plaintiff cites an e-mail from Hill to his attorney describing differences between individual and group medical coverage:

1.   Individual insurance is not guaranteed issue.

2.   An individual insurance carrier currently has the right to decline medical coverage to any proposed insured based on the proposed insured's medical conditions provided in the application, provided by the insurance agent, or discovered by the carrier.

3.   An individual insurance carrier can set forth a rider or certain terms and conditions, and may exclude coverage for medical conditions.

4.   Individual insurance carrier can rate up the policy premium for medical conditions.

5.   Individual insurance coverage is not near as comprehensive as group insurance coverage, as individual coverage omits mental health benefits and maternity benefits unlike group insurance coverage.

6.   The prescription benefit within an individual medical policy requires the insured [to] meet a

---

[42]Plaintiff's Re-Filed and Supplemental Response, Docket Entry No. 45, p. 16 (quoting Exhibit 1, Stock Purchase Agreement, § 8.8.).

separate individual prescription deductible before
the prescription copayment is paid by the insured.[43]

Asserting that "Defendants presented no evidence that their
'individual insurance policy' covered the same health conditions as
the RMIPS Plan and had the same co-pays and deductible,"[44] plaintiff
argues that defendants' motion for summary judgment should be
denied because "the individual health insurance policy is not
equivalent to the RMIPS Plan in law or fact."[45]

In support of his argument that the benefit payment offer of
$44,368.54 cannot constitute a waiver because the amount offered
was based on flawed methodology and was made *after* the "payment in
lieu of benefits" provision in the Amended Agreement expired,
plaintiff cites the deposition testimony of RMI's president, Chi
(Cindy) Luu.  Luu testified that the payment sent to plaintiff in
lieu of insurance coverage was neither paid by RMI nor paid before
the sale of RMI to Orion as provided by the Amended Purchase
Agreement.[46]  Luu also testified that she did not entirely agree
with the amount offered to plaintiff because it was calculated on
the basis of the cost of Orion's plan and not on the cost of the

---

[43]Exhibit 15 to Plaintiff's Re-Filed and Supplemental Response,
Docket Entry No. 45.

[44]Plaintiff's Re-Filed and Supplemental Response, Docket Entry
No. 45, p. 16.

[45]Id. at 17.

[46]Luu Deposition, Exhibit 14 to Plaintiff's Re-Filed and
Supplemental Response, Docket Entry No. 45, pp. 32:22-33:25.

benefits to plaintiff under the plan of which plaintiff was a participant, and that the costs of those benefits would have been more.[47]

The evidence that plaintiff cites is capable of establishing that the individual insurance policy offered to him in July and August of 2008 did not provide him coverage equivalent to coverage provided to RMI employees.  Plaintiff has also presented evidence capable of establishing that the amount of money that Orion sent him in September of 2008, i.e., $44,368.54, was neither paid prior to the sale of RMI's assets to Orion, nor correctly calculated to represent the present value of what RMI would have had to pay plaintiff under ¶ 3(iii) of the Amended Purchase Agreement for the period between the time of the sale and the time when plaintiff is eligible for Medicare coverage.  Because defendants have not offered evidence from which a reasonable fact-finder could conclude either that the individual policy offered to plaintiff in July and August of 2008 would, in fact, have provided him coverage equivalent to coverage provided to RMI employees, or that the $44,368.54 that Orion offered to him in lieu of health insurance was correctly calculated, defendants have failed to establish that they are entitled to summary judgment because plaintiff waived his right to health insurance coverage by refusing to accept either the individual policy offered to him in July and August of 2008 or the check for $44,368.54 that Orion sent to him in September of 2008.

---

[47]Id. at 57:12-58:19.

      (c)   Defendants Have Not Established that Plaintiff's Failure to Exhaust Administrative Remedies Entitles Them to Summary Judgment.

Defendants argue that they are entitled to summary judgment on plaintiff's claims for ERISA plan benefits in the form of health insurance coverage because plaintiff failed to exhaust the administrative remedies available to him under the plan in which he was a participant, i.e., the RMI Plan that was terminated effective August 31, 2008.  In support of this argument, defendants assert that § 6.6 of the Certificate of Coverage for the RMI Plan that was terminated provided plaintiff with an administrative complaint and appeal process to pursue his claim for health insurance coverage if he believed that he possessed an ERISA-plan related claim.[48]  Citing the affidavit of Kim Singleton, defendants argue that plaintiff's claims for benefits are barred because plaintiff never pursued any such claim through the administrative process.[49]

Plaintiff responds that he made a proper claim for benefits with the plan administrators and that the plan administrators rejected his claims.[50]  Citing 29 C.F.R. § 2560.503-1(l) plaintiff

---

[48]Singleton Affidavit, Exhibit A to Defendants' Re-Filed MSJ, Docket Entry No. 40, ¶ 23 ("Section 6.6 of the Certificate of Coverage for the RMI Terminated Plan that I forwarded to Plaintiff sets forth an administrative complaint and appeal process that Plaintiff could use to pursue his claim for health insurance coverage if he believed that he possessed such a claim.  Plaintiff did not file any complaint or claim for benefits under the administrative process.").

[49]Defendants' MSJ, Docket Entry No. 40, p. 17.

[50]Plaintiff's Re-Filed and Supplemental Response, Docket Entry No. 45, pp. 17-18.

argues that when an administrator or fiduciary fails to respond to a claim for benefits, ERISA presumes that the claim is denied after 90 days has passed, and that if adequate claims procedures or documents are not provided to the ERISA plan participant, courts presume administrative remedies are satisfied.   Plaintiff argues that despite never having had any access to the actual claims and appeals procedures, by contacting Singleton and Luu repeatedly he did everything that he could to properly file a claim for benefits and appeal the plan administrator's decisions, and that in the process he exhausted his administrative remedies and preserved his right to litigation.[51]   In support of this argument plaintiff has submitted e-mail correspondence with Singleton and Luu in August of 2008 regarding his claim for plan benefits.[52]

### (1)   Applicable Law

Generally, "claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits [under § 1132(a)(1)]". Bourgeois v. Pension Plan for Employees of Santa Fe International Corporations, 215 F.3d 475, 479 (5th Cir. 2000).   However, when the administrator fails to follow claims procedures consistent with the [regulatory] requirements,

_____

[51]Id.

[52]Exhibit 5 to Plaintiff's Re-Filed and Supplemental Response, Docket Entry No. 45.

a claimant shall be deemed to have exhausted the
administrative remedies available under the plan and
shall be entitled to pursue any available remedies under
section 502(a) of the Act[, 29 U.S.C. § 1132(a)(1),] on
the basis that the plan has failed to provide a
reasonable claims procedure that would yield a decision
on the merits of the claim.

29 C.F.R. § 2560.503-1(*l*).

"ERISA provides certain minimal procedural requirements upon

an administrator's denial of a benefits claim." Wade v.

Hewlett-Packard Development Co. LP Short Term Disability Plan, 493

F.3d 533, 539 (5th Cir. 2007), abrogated on other grounds by Hardt

v. Reliance Standard Life Ins. Co., 130 S.Ct. 2149, 2157-58 (2010).

The plan administrator must "provide adequate notice in writing to

any participant or beneficiary whose claim for benefits under the

plan has been denied, setting forth the specific reasons for such

denial, written in a manner calculated to be understood by the

participant." 29 U.S.C. § 1133(1). The plan administrator must

also "afford a reasonable opportunity to any participant whose

claim for benefits has been denied for a full and fair review by

the appropriate named fiduciary of the decision denying the claim."

29 U.S.C. § 1133(2). The Department of Labor has promulgated

regulations pertaining to the denial of a claim, which provide in

part:

[T]he plan administrator shall provide a claimant with
written or electronic notification of any adverse benefit
determination . . . The notification shall set forth, in
a manner calculated to be understood by the claimant-

(i) The specific reason or reasons for the adverse
determination;

-42-

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.

29 C.F.R. § 2560.503-1(g)(1)(i)-(iv).

ERISA does not require strict compliance with its procedural requirements, mandating only that plan administrators substantially comply with the statute and accompanying regulations. See Lacy v. Fulbright & Jaworski, 405 F.3d 254, 256-57 (5th Cir. 2005). technical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled, Robinson v. Aetna Life Ins., 443 F.3d 389, 393 (5th Cir. 2006), which is "'to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial.'" Wade, 493 F.3d at 539. See also Cooper v. Hewlett-Packard Co., 592 F.3d 645, 652 (5th Cir. 2009). In assessing whether the administrator has substantially complied with the applicable procedural requirements, courts must consider "all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." Wade, 493 F.3d at 539 (quoting Moore v. LaFayette

-43-

Life Ins. Co., 458 F.3d 416, 436 (6th Cir. 2006)).  Whether the plan administrator substantially complied with the notice requirements is a question of law.  Baptist Memorial Hospital — DeSoto Inc. v. Crain Automotive Inc., 392 Fed.Appx. 288, 293 (5th Cir. 2010) (citing Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 235 (4th Cir. 1997)).

### (2)   Application of the Law to the Facts

Defendants have neither argued nor cited evidence capable of establishing that the plan administrators' communications with the plaintiff "substantially complied" with the applicable procedural requirements for denying a claim.  Although there is evidence that Singleton informed plaintiff that neither RMI nor Orion would provide him insurance benefits under an ERISA plan because the RMI plan was terminated and because he was not an Orion employee, there is no evidence that Singleton or anyone else at RMI or Orion ever advised plaintiff of either plan's administrative remedies as required by ERISA and the regulations promulgated thereunder.  See Baptist Memorial Hospital, 392 Fed.Appx. at 294.  Because defendants fail to present any evidence capable of establishing that they substantially complied with their duty to notify plaintiff that he had a right to appeal the decision not to provide him plan benefits and, instead, to provide him a check for $44,368.54, the court concludes that defendants have failed to establish that they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies.

## C.   Equitable Claims for Injunctive Relief

Plaintiff seeks preliminary and permanent injunctive relief

under ERISA § 1132(a)(3).   In pertinent part plaintiff alleges:

> Once Mr. Amos succeeds on his claim, the Court should
> permanently order Defendants to provide Mr. Amos and his
> wife and dependents, if any, with retiree class health
> coverage that is the same as that provided to RMI's
> employees (from the standpoint of the extent of coverage
> and co-pays and deductibles), paying all of the
> applicable healthcare premiums, as well as reimburse
> Mr. Amos, with interest, for the premiums and health
> claims he has paid since September 1, 2008.
> Alternatively, the Court should permanently order
> Defendants to reimburse Mr. Amos, with interest, for the
> premiums and health claims he has paid since September 1,
> 2008, and thereafter pay him an amount equal to what
> RMIPS would have been obligated to pay toward his and his
> family's premiums until Mr. Amos is eligible for Medicare
> coverage.   Further, in the alternative, the Court should
> permanently order Defendants to pay Mr. Amos the present
> value of what RMIPS would have to pay Mr. Amos under
> subparagraph (iii) of the Amendment for the period
> between the time of the sale and the time when Mr. Amos
> is eligible for Medicare coverage.[53]

Citing <u>Tolson v. Avondale Industries, Inc.</u>, 141 F.3d 604, 610

(5th Cir. 1998), defendants argue that this claim fails as a matter

of law because a party cannot simultaneously prosecute claims for

the recovery of benefits under § 1132(a)(1)(B) and for injunctive

relief under § 1132(a)(3).   Plaintiff responds that the Fifth

Circuit's holding in <u>Tolson</u> does not mean that

> a plaintiff may *never* maintain an (a)(1)(B) and (a)(3)
> claim at the same time.   Because Mr. Amos seeks
> establishment and recognition of a "class" of
> "retiree[s]" who form part of the "group" covered by

---

[53]Plaintiff's Original Complaint, Docket Entry No. 1, ¶ 45.

Defendants' ERISA plans, summary judgment is not appropriate.[54]

In support of this argument, plaintiff cites Singleton's deposition testimony that in the ERISA context "class" means different groupings of employees eligible to receive benefits and that the class of retirees includes "other owners of acquired companies that were similarly situated with Mr. Amos" as well as hundreds of other retired Orion employees.[55]

Title 29, Section 1132(a)(3) authorizes an action for equitable relief. Under 29 U.S.C. § 1132(a)(3), a participant, beneficiary, or fiduciary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Section 1132(a)(3) is not an option for plaintiff because it is a safety net offering appropriate equitable relief for injuries that § 1132 would not otherwise redress. See Varity Corp. v. Howe, 116 S.Ct. 1065 (1996). In Varity the Supreme Court observed that "where Congress elsewhere provided adequate relief for a

---

[54]Plaintiff's Re-Filed and Supplemental Response, Docket Entry No. 45, p. 20. See also Plaintiff Charles E. Amos II's Sur-Reply to Defendants' Motions for Summary Judgment, Docket Entry No. 56, pp. 11-12 (reiterating that plaintiff seeks establishment and recognition of a class of retirees who form part of the group covered by defendants' ERISA plans).

[55]Id. (citing Exhibit 13, Deposition of Kim Singleton, pp. 16-27).

-46-

beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Id. at 1079 (citing Massachusetts Mutual Life Ins. Co. v. Russell, 105 S.Ct. 3085, 3091 (1985)).

The Fifth Circuit has held that an ERISA plaintiff may not seek to recover "make-whole" plan benefits as equitable relief under Section 1132(a)(3). See Amschwand v. Spherion Corp., 505 F.3d 342, 348 (5th Cir. 2007), cert. denied, 128 S.Ct. 2995 (2008). In Amschwand, 505 F.3d at 348, the Fifth Circuit explained that "[a]ppropriate equitable relief" under § 1132(a)(3) does not include payment of plan benefits that would have accrued absent the fiduciary's breach of fiduciary duty, but rather the equitable restitution of a disputed res, such as refund of policy premiums. When a participant or beneficiary seeks what was supposed to have been distributed under an ERISA plan, the appropriate remedy is a claim for denial of benefits under Section 1132(a)(1), and not a claim for breach of fiduciary duty under Section 1132(a)(3). See Mertens v. Hewitt Assocs., 113 S.Ct. 2063, 2068 (1993) (concluding that the plaintiffs were not entitled to relief under § 1132(a)(3) because "[a]lthough they often dance around the word, what petitioners in fact seek is nothing other than compensatory damages — monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of legal relief.").

-47-

The claims for equitable relief that plaintiff has asserted under 29 U.S.C. § 1132(a)(3) are subject to dismissal because, like the claims for equitable relief asserted in <u>Amschwand</u>, 505 F.3d at 348, plaintiff's claims are in reality claims for the denial of benefits actionable under § 1132(a)(1), and not claims for breach of fiduciary duty actionable under § 1132(a)(3). Plaintiff's argument that his claims for equitable relief are not subject to dismissal because they are not claims for individual relief but, instead, claims pursuant to which he seeks "establishment and recognition of a 'class' of 'retiree[s]' who form part of the 'group' covered by Defendants' ERISA plans,"[56] is belied by the fact that plaintiff sought leave to amend his complaint to clarify that he "seeks the formation of a 'retiree class' of participants under Defendants' ERISA-covered group health insurance plans."[57] For the reasons stated in an Order entered on May 5, 2013 (Docket Entry No. 53), the court denied plaintiff's motion for leave to amend. Fifth Circuit case law "makes it clear that 'reinstatement' of benefits . . . does not qualify as equitable relief under § 1132(a)(3) when, as here, the plaintiff 'casts [his] prayer for relief as equitable, [but] in substance [he] is seeking damages in the form of [plan benefits].'" <u>Khan v. American International Group, Inc.</u>, 654 F.Supp.2d 617, 628 (S.D. Tex. 2009) (quoting <u>Hobbs</u>

---

[56]<u>Id.</u>

[57]Plaintiff's Motion for Leave to File First Amended Complaint, Docket Entry No. 43, p. 1.

-48-

*v. Baker Hughes*, 294 Fed.Appx. 156, 159 (5th Cir. 2008)).  When adequate relief is available to plaintiff under § 1132(a)(1)(B) for the denial of benefits, allowing plaintiff to proceed under § 1132(a)(3) would not be appropriate.  *Id.*  Because adequate relief is available to the plaintiff under § 1132(a)(1)(B), defendants' motion for summary judgment will be granted as to plaintiff's claims for equitable relief.

**D.    Claims for Attorney's Fees and Costs**

Plaintiff seeks to recover costs and attorney's fees pursuant to § 1132(g)[58] and the Purchase Agreement documents.[59]  Citing *Deus v. Allstate Insurance Co.*, 15 F.3d 506, 521 (5th Cir.), *cert. denied*, 115 S.Ct. 573 (1994), defendants argue that this claim fails as a matter of law because such claims do not constitute independent claims for relief, and citing *Hardt v. Reliance Standard Life Insurance Co.*, 130 S.Ct. 2149, 2158 (2010), defendants argue that these claims fail because plaintiff's substantive ERISA claims fail and "a claimant must show some degree of success on the merits before a court may award attorneys' fees under § 1132(g)(1)."[60]  Because for the reasons stated in § IV.B, above, the court has concluded that defendants are not entitled to

---

[58]Plaintiff's Original Complaint, Docket Entry No. 1, p. 12 ¶ 48.

[59]*Id.* at 12-13 ¶¶ 49-52.

[60]Defendants' MSJ, Docket Entry No. 40, p. 4.  *See also id.* at 19-20.

summary judgment on plaintiff's claims arising from defendants' failure to provide plan documents requested in October of 2011 or on plaintiff's claims for ERISA plan benefits, defendants are not entitled to summary judgment on plaintiff's claims for attorney's fees.

### V.   Conclusions and Order

For the reasons explained in § IV.A, above, defendants are entitled to summary judgment on plaintiff's claims for failure to provide plan documents in violation of 29 U.S.C. §§ 1132(a)(1)(A) and 1132(c) arising from requests that plaintiff made in August of 2008, but defendants are not entitled to summary judgment on such claims arising from requests for plan documents made by plaintiff's attorney in October of 2011.  For the reasons explained in § IV.B., above, defendants are not entitled to summary judgment on plaintiff's claims for ERISA plan benefits asserted under 29 U.S.C. § 1132(a)(1)(B).  For the reasons explained in § IV.C, above, defendants are entitled to summary judgment on plaintiff's claims for equitable relief asserted under 29 U.S.C. § 1132(a)(3).  For the reasons explained in § IV.D, above, defendants are not entitled to summary judgment on plaintiff's claims for attorneys' fees. Accordingly, the Re-Filed Motion for Summary Judgment of Defendants Plan Administrator of Orion HealthCorp, Inc. Employee Benefit Plans, Orion HealthCorp, Inc. Employee Benefit Plans, Orion HealthCorp, Inc., RMI Physician Services Corporation, Kim

Singleton, RMI Physical Services Corporation Employee Benefit Plans, and Plan Administrator of RMI Physician Services Corporation Employee Benefit Plans (Docket Entry No. 40) is **GRANTED IN PART and DENIED IN PART.**

The parties shall file a Joint Pretrial Order by Friday, December 6, 2013. Docket Call will be held on Friday, December 13, 2013, at 4:00 p.m. in Courtroom 9-B, United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.

**SIGNED** at Houston, Texas, on this 7th day of November 2013.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-51-